**In re TM CARLTON HOUSE PARTNERS, LTD., Debtor.**

**John C. BERG, Plaintiff,**

**v.**

**TM CARLTON HOUSE PARTNERS, LTD., Defendant.**

**Bankruptcy No. 88–10774S.**
**Adv. No. 89–1088S.**

United States Bankruptcy Court,
E.D. Pennsylvania.

Feb. 7, 1990.

---

**3.** The result here is consistent with the implicit holding of the majority in *Oneida Motor Freight, Inc. v. United Jersey Bank,* 848 F.2d 414 (3d Cir.), *cert. denied,* — U.S. —, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988), that a non-bankruptcy court is the appropriate forum to hear post-confirmation disputes which do not challenge confirmation of the Plan. This result is logical because, as the Defendants, in making their § 12(b)(6) motion, observe, a bankruptcy court is confined by 11 U.S.C. § 1144 to hearing direct attacks to confirmation "if and only if" confirmation was procured by fraud, and even then only if the attack is levelled within 180 days after the order for confirmation is entered. *See, e.g., In re Crown Globe, Inc.,* 107 B.R. 60, 61 (Bankr.E.D.Pa.1989).

It is logical to assume that remedies for frauds which are perpetuated in obtaining the entry of an order of confirmation can be pursued in some forum even after the 180–day period. However, the remedy of revoking a confirmation order, which would appear to be confined to the bankruptcy court forum, is foreclosed after the 180–day period runs. The forum in which to pursue remedies other than revocation of confirmation would, in our view, not ordinarily be the bankruptcy curt.

Here, of course, the Plaintiffs would, in any event, appear to allege no fraud which would justify revoking the confirmation order. In fact, the Affidavits of Persio and Fischer, see pages 178–79 *supra,* might be said to indicate that they were parties to the fraud of obtaining approval of a Disclosure Statement and Confirmation of a Plan which contained material inaccuracies.

**186**

John G. Berg, Philadelphia, Pa., plaintiff pro se.

Joanne Zack, Philadelphia, Pa., for Equity Sec. Holders.

Cole Silver, Philadelphia, Pa., for Teebesco.

Geoff Veitch, Philadelphia, Pa., for Capital Group.

Marvin Krasny, Philadelphia, Pa. and Mark S. Lieberman, Chicago, Ill., for Skokie.

James J. O'Connell, Philadelphia, Pa., Ass't U.S. trustee.

Mark J. Packel, Philadelphia, Pa., for Creditors' Committee.

Martin J. Weis and Lawrence G. McMichael, Philadelphia, Pa., for debtor.

Stephen Raslavich, Philadelphia, Pa., for Bergs.

David Smith, Philadelphia, Pa., for Concap.

---

MEMORANDUM

DAVID A. SCHOLL, Bankruptcy Judge.

In the instant adversarial proceeding, filed on November 29, 1989, JOHN G. BERG (hereinafter "the Plaintiff"), seeks, in a pro se Complaint[1] filed pursuant to 11 U.S.C. § 1144, to have this court revoke for fraud its Order confirming the Plan of Reorganization of a large Chapter 11 Debtor, TM CARLTON HOUSE PARTNERS, LTD. (hereinafter "the Debtor"). On December 15, 1989, the Debtor responded by filing a Motion to Dismiss the Complaint based upon the lack of this court's jurisdiction due to the allegedly untimely filing of the Complaint; the Plaintiff's alleged failure to state a claim upon which relief can be granted because of the absence of particular averments of fraud; and the Plaintiff's alleged lack of standing.

We conclude that the 180–day time limit set forth in § 1144 must be measured from the date of confirmation of a modified Plan on June 14, 1989, rendering the filing of the Complaint timely; that the Plaintiff appears to be within the broad category of a "party in interest" having standing to maintain this proceeding; and that the Plaintiff's failure to aver fraud with particularity can be cured in an Amended Complaint. Therefore, the Debtor's motion will be granted only insofar as the Plaintiff will be obliged to file an Amended Complaint.

On March 7, 1988, the Plaintiff joined two other creditors in filing an involuntary bankruptcy petition against the Debtor. Subsequently, on March 31, 1988, this court entered a consensual Order for relief, and the Debtor commenced the Chapter 11 reorganization process. The history of the case, involving reorganization of a large commercial and residential building covering an entire block in center city Philadelphia, and, to some extent, the Plaintiff's relationship to this case, is chronicled in (1) An Adjudication of December 15, 1989, denying the claim of a broker for a finder's fee for bringing together the Plaintiff, as

---

1. The Plaintiff is, however, an attorney, whose presence in this court is ubiquitous. *See In re John G. Berg Associates*, Bankr. No. 89–12337S.

Also, ironically, his address is given as a suite in the Debtor's building.

principal of the seller, and Steven M. Mullins (hereinafter "Mullins"), as principal of the buyer, in the sale of the Debtor's building, slip op. at 2–9; (2) An Opinion published at 93 B.R. 859, 861–62 (Bankr.E.D.Pa.1988), resolving a dispute with a large tenant; and (3) An Opinion published at 91 B.R. 349, 351–53 (Bankr.E.D.Pa.1988), allowing the Debtor to use cash collateral in the face of opposition by a mortgagee, Skokie Federal Savings and Loan Association (hereinafter "Skokie").

The history recited in those sources need not be reiterated. It should be noted, however, that, prior to a hearing to consider confirmation of the Debtor's Amended Plan on May 31, 1989, the Plaintiff executed a May 1, 1989, settlement agreement with Skokie in which he sold his $5 million claim against the Debtor to Skokie for $2 million.

A court order confirming the Plan was entered on June 1, 1989. On June 8, 1989, the Debtor filed a motion to modify the confirmed Plan in several respects deemed sufficiently technical to not require the preparation of an Amended Disclosure Statement.[2] After notice and a hearing held on June 14, 1989, this court confirmed the Plan as modified and entered another Order confirming same on June 16, 1989. Appeals from the Orders of June 1, 1989, and June 16, 1989, were taken by only the Committee of the Debtor's Equity Secured Holders, which resulted in denial of a stay pending appeal and, ultimately, withdrawal of the appeals.

On November 29, 1989, the Plaintiff filed the instant adversary proceeding. The Complaint is only three pages in length. It alleges, in somewhat generalized fashion, that the Personal Financial Statement of Mullins, a general partner of the Debtor, attached to the Debtor's final Disclosure Statement was materially false and that the alleged fraud arising from publication of this Statement induced the Plaintiff to enter into his deal with Skokie and may have influenced other creditors to vote for the Plan. The Complaint invokes 11 U.S.C.

§ 1144 and requests specifically that the confirmation Order of *June 1*, 1989, be revoked.

Upon receipt of the Debtor's motion, we entered an Order of December 22, 1989, directing the Plaintiff to answer the Motion by December 22, 1989, and the parties to file Briefs supporting their respective positions relevant to it on or before January 10, 1990 (the Debtor), and January 22, 1990 (the Plaintiff). We also stayed discovery, which the Plaintiff sought to expedite, pending disposition of this Motion.

The Debtor recites no Bankruptcy Rule (hereinafter "B.Rule") or correlative Federal Rule of Civil Procedure (hereinafter "F.R.Civ.P.") pursuant to which its motion is made. The motion does, however, contain the phrases "lack of jurisdiction" and "failure to state a cause of action upon which relief can be granted." We therefore surmise that it is based upon B. Rule 7012(b) and F.R.Civ.P. 12(b)(1) and (b)(6). The burden upon the moving party in a 12(b)(6) motion is rigorous, as we stated in *In re Dinkins*, 79 B.R. 253, 256–57 (Bankr. E.D.Pa.1987):

It is black-letter law that a motion to dismiss "is viewed with disfavor and is rarely granted" and that such relief is "to be granted only in the unusual case in which the plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." 5 C. WRIGHT & A. MILLER, FEDERAL PRACTICE & PROCEDURE, § 1357, at 598, 604 (1969). Put otherwise, "the court should deny a motion to dismiss for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" 2A J. MOORE, FEDERAL PRACTICE, § 12.07[2.5], at 12–65 (2d ed. 1987) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

*See also, e.g., McLain v. Real Estate Bd. of New Orleans*, 444 U.S. 232, 246, 100

---

**2.** Most of the changes involved extending the time in which limited partners could elect to receive payment under the Plan and thereupon

release their claims against the Debtor and its general partners.

S.Ct. 502, 511, 62 L.Ed.2d 441 (1980); *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); and *O'Boyle v. Jiffy Lube Int'l, Inc.,* 866 F.2d 88, 93 (3d Cir.1989).

■ With respect to the Debtor's limitations claim, we begin by observing that "[t]here can be no question that the time bar of 11 U.S.C. § 1144 is jurisdictional." *In re Wilson Foods Corp.,* 45 B.R. 776, 778 (Bankr.W.D.Okla.1985). Section 1144 provides as follows:

> On request of a party in interest *at any time before 180 days after the date of the entry of the order of confirmation,* and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud. An order under this section revoking an order of confirmation shall—
>
> (1) contain such provisions as are necessary to protect any entity acquiring rights in good faith reliance on the order of confirmation; and
>
> (2) revoke the discharge of the debtor (emphasis added).

The Debtor argues that entry of the Order of Confirmation occurred on June 1, 1989, and that the Plaintiff was therefore required to file his complaint no later than 180 days after the entry of the Confirmation Order, which it claims renders the last date for filing to be November 28, 1989. Under the Debtor's premise, the filing on November 29, 1989, is at least one day later than is statutorily allowed.

Neither party disputes that the court is required to strictly construe this 180–day time limitation, "even though the fraud was discovered beyond the 180–day time period." *In re Crown Globe, Inc.,* 107 B.R. 60, 61 (Bankr.E.D.Pa.1989), citing *In re Cinderella Clothing Industries, Inc.,* 93 B.R. 373 (Bankr.E.D.Pa.1988). *See also In re Crusader Oil Refining Corp.,* 47 F.Supp. 873, 874 (D.N.J.1942) (informally bringing matter to court's attention within 180–day period is insufficient to stay running of limitations); *In re Air One, Inc.,* 75 B.R. 1003 (Bankr.E.D.Mo.1987) (filing of a

*motion* to revoke confirmation within 180 days is insufficient to stay running of limitations); and *In re Chipwich, Inc.,* 64 B.R. 670, 678 (Bankr.S.D.N.Y.1986) (filing of a motion to revoke confirmation 12 days after the 180–day period has run is too late); and *Wilson, supra,* 45 B.R. at 777–78 (a timely filing of a proceeding challenging confirmation by the Creditors' Committee, which had by that time officially dissolved, will not "relate back" to render complaint by creditors seeking to be substituted as parties timely).

The point of contention between the parties here lies in the "date of the entry of the order of confirmation" for consideration under 11 U.S.C. § 1144. The Plaintiff argues, contrary to the averments in his Complaint referencing the June 1, 1989, date, that the Modified Plan confirmed by the Order of June 16, 1989, becomes the Plan for purposes of application of the 180–day period of 11 U.S.C. § 1144. We agree.

11 U.S.C. § 1127(b), relating to modification of confirmed plans, reads as follows:

> (b) The proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. *Such plan as modified* under this subsection *becomes the plan* only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title (emphasis added).

The June 16, 1989, Confirmation Order followed notice and a hearing of June 14, 1989. Consequently, the Plan confirmed by the Order of June 16, 1989, *became* the Debtor's Plan of Reorganization.

Although it is impossible to dispute that a confirmation Order, once entered, is final, *see, e.g.,* 11 U.S.C. §§ 1141(a), (c); and *In re Szostek,* 886 F.2d 1405, 1408 (3d Cir.1989), 11 U.S.C. § 1127(b) specifically allows the modified plan to "become" the plan after court confirmation of the modified Plan. Consequently, the court order of June 16,

1989, confirming the modified Plan establishes the date of that order as to the date from which the time limit for filing a complaint seeking revocation of confirmation must be filed pursuant to § 1144.

Support for this position is found in 1 RESTATEMENT (SECOND) OF JUDGMENTS, § 15, at 143 (1982), which states:

> When in two actions inconsistent final judgments are rendered, it is the later, not the earlier, judgment that is accorded conclusive effect in a third action under the rules of res judicata.

Although no case which we have located directly addresses this issue, our conclusion is implicitly supported by the court in *Air One, supra,* 75 B.R. at 1004, which, without discussion, measures the 180–day period from the date that the Debtor's Fourth Amended Plan of Reorganization (As Modified) was approved.

Therefore, although significant restriction and court control are imposed on modifications of plans, as delineated in § 1127(b), post-confirmation modification is allowed. In obtaining confirmation of its modified Plan, the Debtor satisfied the court that all statutory restrictions had been met. Therefore, the modified Plan replaced the Plan confirmed on June 1, 1989, and the date of entry of the order confirming the modified Plan now determines the date for filing a complaint to revoke confirmation.

The resultant date for submission of a motion to revoke the confirmation order would be within 180 days from June 16, 1989, or December 13, 1989. The Plaintiff's motion of November 29, 1989, was thus timely.

We note, however, that the Plaintiff's Complaint specifically requests an order be entered by this court revoking the order confirming the Plan entered by this court on *June 1,* 1989. We have just observed that the Order of June 16, 1989, replaced the Order of June 1, 1989. Revocation of the *June 1* Order cannot be before this court, as that Order has been superseded.

We believe that the proper resolution of this problem is to allow the Plaintiff to amend his Complaint. "If amendments will conceivably cure the defects, then we should not dismiss the Complaint, but allow ... the necessary corrections." *Dinkins, supra,* 79 B.R. at 257. *See also* 2A J. MOORE, FEDERAL PRACTICE, ¶ 12.07[2.–5], at 12–72 (2d ed. 1989). The Plaintiff should therefore be permitted to amend this Complaint to seek revocation of the June 16, 1989, Order.

■ Secondly, the Debtor challenges the Plaintiff's standing to assert an § 1144 claim. That Code section, it will be recalled, see page 188 *supra,* requires that a request to revoke confirmation must be made by "a party in interest." Pertinent to resolution of this issue is 11 U.S.C. § 1109(b), which provides as follows:

> A party in interest, including the debtor, the trustee, a creditors' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

The Bankruptcy Code does not define term "party in interest." However, 11 U.S.C. § 1109(b) "does not limit who in a Chapter 11 case may be a party in interest," and it "must be construed broadly." 5 COLLIER ON BANKRUPTCY, ¶ 1109.02, at 1109–24, 1109–25 (15th ed. 1989). "[T]he term 'party in interest' is not limited by the small list of examples in § 1109(b)." *In re Amatex Corp.,* 755 F.2d 1034, 1042 (3d Cir.1985). Thus, in *In re McKeesport Steel Castings Co.,* 799 F.2d 91, 94 (3d Cir.1986), the Court of Appeals held that a utility had standing to maintain an action under 11 U.S.C. § 506(c), even though that Code section appeared to confine maintenance of an action pursuant to it to the Trustee. In *In re Nicolet, Inc.,* 80 B.R. 733, 738 (Bankr.E.D.Pa.1987), we stated,

> following *McKeesport,* we have been reluctant to prevent a creditor from maintaining a meritorious action against other creditors upon the sole basis of lack of standing. *In re Morrison,* 69 B.R. 586, 588–90 (Bankr.E.D.Pa.1987). As we stated there and in other contexts, "we are most reluctant to decide issues put be-

fore us on the ground that a party avidly expressing a legal position should not be allowed to do so on the basis of lack of standing." *In re United Church of the Ministers of God,* 74 B.R. 271, 276 (Bankr.E.D.Pa.1987). *See also In re Young,* 70 B.R. 968, 970–71 (Bankr.E.D. Pa.1987).

*Accord, Crown Globe, supra,* 107 B.R. at 61–62.

The Debtor argues that the Plaintiff cannot be a party in interest because, in a transaction with Skokie, he exchanged his entire interest in the Debtor for $2 million and forgiveness of debts arising prior to confirmation of the Plan. The Plaintiff, however, counters that his pre-confirmation settlement, though with Skokie and was based on the fraudulent statements made by Mullins, the Debtor, and Skokie, which fraudulent statements carried forward into Plan confirmation and subsequently into the confirmed Plan. The Plaintiff further asserts that, once fraud is proven, he may proceed to have his sale transaction with Skokie nullified, restoring him to creditor status.

While the Plaintiff has sold his pre-confirmation interest, if his claims of fraud are valid, the existence of the confirmed plan continues to operate to the benefit of those he claims perpetrated the fraud against him. Yet, the confirmation would be essentially a final judgment binding his claimed interest. To refuse to give the Plaintiff the opportunity to halt the progress of the ongoing plan would possibly jeopardize any future interest he may have and may warrant the present action.

The Plaintiff thus previously stood as a primary creditor and now claims that fraud on the part of the Debtor led to his change of status. If fraud is proven, the Plaintiff's claimed interest in the Debtor's Reorganization Plan would be measurably tied to his pursuit of a remedy for the Debtor's

alleged fraudulent acts. The allegations need to be proven, but at this time they at least stand as contentions that the Plaintiff sold a $5 million claim for $2 million, because of the challenged misrepresentations. This stands as a significant alleged loss by the Plaintiff, and, if the allegations are correct, disruption of the confirmation process may be proper.[3]

■ Finally, the Plaintiff also contends that the Complaint failed to comply with the standards of F.R.Civ.P. 9(b), which is incorporated into proceedings in bankruptcy court through B.Rule 7009 and states in part as follows: "in all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." *See In re Yancey,* 46 B.R. 621, 634 (Bankr.E.D.Pa.1985); and *In re Grossman,* 46 B.R. 319, 320 (Bankr.E.D.Pa.1985).

There is some dispute about the scope of fraud that must be alleged to prevail in an action brought pursuant to § 1144. In *In re Kostoglou,* 73 B.R. 596, 598–99 (Bankr. N.D.Ohio 1987), the court holds that an allegation of a "fraud on the court" as opposed to "classic fraud" will suffice. *But see Crusader Oil Refining, supra,* 47 B.R. at 874 (vague statement of fraud concerning facts which were within the knowledge of the party challenging confirmation at the time of confirmation is insufficient); and *In re D.F.D., Inc.,* 43 B.R. 393, 395 (Bankr.E.D.Pa.1984) (court will not protect a creditor which is itself not vigilant in informing the court of matters which might have resulted in the court's refusal to enter a confirmation order).

The Complaint certainly could and we believe must be drafted more clearly and precisely. However, again quoting *Dinkins, supra,* 79 B.R. at 257, "[i]f amendments will conceivably cure the defects, then we should not dismiss the Complaint, but allow the necessary corrections."

---

**3.** We do note, however, that it may be possible for the Plaintiff to pursue claims against non-debtor third parties in other forums even if he is ultimately unsuccessful in satisfying the hearing evidentiary burden under § 1144 necessary to revoke confirmation. *See In re Greenley Energy Holdings of Pennsylvania, Inc., Pennsylvania*

*Companies, Inc. v. Stone,* Bankr. 110 B.R. 173, 185 n. 3 (Bankr.E.D.Pa.1990) (§ 1144 does not prevent actions in other forums against non-debtors after the 180–day period alleging fraud in the confirmation process which do not challenge the confirmation order itself).

The Plaintiff's Motion to Dismiss is itself, in light of its failure to reference a particular rule under which it is made, hardly a model of a clear pleading. The aspect of the motion invoking F.R.Civ.P. 9(b) appears most likened to a motion for a more definite statement, pursuant to F.R. Civ.P. 12(e). Such motions are not generally favored, *see American International Airways, Inc.*, 66 B.R. 642, 645–46 (Bankr. E.D.Pa.1986); and 2A J. MOORE, *supra*, ¶ 12.18[1], at 12–141, but may be appropriate if preparatory to a motion to dismiss (or possibly a motion for summary judgment). *See id.*, ¶ 12.18[4], at 12–155.

Even when F.R.Civ.P. 12(e) motions are granted, the pleader is generally given, by the terms of F.R.Civ.P. 12(e) itself, ten days to present a more specific pleading before the pleading is dismissed. Here, we shall require the Plaintiff to amend his Complaint to both change the reference to the Order of June 1, 1989, to the Order of June 16, 1989, as his target, and amend the Complaint to add more particularity to his allegations of fraud.

For the reasons set forth in this Memorandum, we will proceed to deny most aspects of the Debtor's Motion to Dismiss and allow the Plaintiff about ten days hereafter to file an Amended Complaint.

## ORDER

AND NOW, this 7th day of February, 1990, upon consideration of the Motion of the Debtor–Defendant to Dismiss the Complaint in this proceeding and the Briefs of the Plaintiff and the Debtor in reference to same, it is hereby ORDERED AND DECREED as follows:

1. The Debtor's Motion is GRANTED in part only.

2. The Plaintiff shall file an Amended Complaint consistent with the foregoing Memorandum on or before February 20, 1990. If he fails to do so, this proceeding may be dismissed upon praecipe by the Debtor.

3. This proceeding shall afterwards proceed in accordance with the time-schedule set forth in the Summons which will be issued when the Amended Complaint is filed.