**In re ORANGE TREE ASSOCIATES, LTD., Debtor.**

**DALE C. ECKERT CORPORATION, Appellant,**

v.

**ORANGE TREE ASSOCIATES, LTD.; New West Federal Savings and Loan Association, successor to American Savings and Loan Association, Appellees.**

**No. 90–56181.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1991.

Decided April 20, 1992.

Kevin P. Duthoy, Bewley, Lassleben & Miller, Whittier, Cal., for appellant Dale C. Eckert Corp.

Theodor C. Albert, Buchalter, Nemer, Fields & Younger, Newport Beach, Cal., for appellee New West Federal Sav. and Loan Ass'n.

Judith Ilene Bloom, Tobin & Tobin, Los Angeles, Cal., for appellee Orange Tree Associates, Ltd.

Before: BROWNING, ALARCON and T.G. NELSON, Circuit Judges.

JAMES R. BROWNING, Circuit Judge:

### I

Orange Tree Associates is a limited partnership formed to develop a 100–unit condominium complex in Long Beach, California. Before the condominium project was completed, Orange Tree filed a petition for

Chapter 11 bankruptcy in the Los Angeles bankruptcy court.

Orange Tree's principal creditors were the bank that financed the project, whose successor in interest is appellee New West Federal Savings and Loan, and appellant Dale C. Eckert Corporation, the general contractor.[1] New West had first claim to the condominium project under a deed of trust. Eckert held a $765,763 mechanics lien for construction work. The amount due New West under its deed of trust far exceeded the market value of the project, making Eckert's claim virtually worthless. Further, Orange Tree disputed Eckert's $765,763 claim against the Orange Tree estate. Eckert filed a Chapter 7 petition in the San Bernardino bankruptcy court.

The Eckert trustee agreed to exchange Eckert's disputed, secured claim of $765,763 for an undisputed, unsecured claim of $75,000. Orange Tree had proposed a reorganization plan under which unsecured creditors would be paid slightly more than 10 cents on the dollar. If the plan were adopted, Eckert would realize about $8,000 in satisfaction of its $765,763 claim. After the notice and hearing required by 11 U.S.C. § 1128, the Los Angeles bankruptcy court entered an order on June 6, 1988 in the Orange Tree bankruptcy confirming the reorganization plan pursuant to 11 U.S.C. § 1129. The Eckert trustee voted for the plan.

One of Eckert's major creditors, a subcontractor owed more than $200,000 for work on the condominium project, learned of the compromise and the reorganization plan and considered them unfair. The subcontractor informed the Eckert trustee of its theory that New West was a joint venturer on the condominium project with Orange Tree and therefore could not also be the senior lien holder. If New West's deed of trust were set aside on this ground, Eckert could collect its claim. The Eckert trustee decided nonetheless not to challenge the New West deed of trust.[2]

On September 22, 1988, more than two months after the Orange Tree reorganization plan had been confirmed, the Eckert trustee and Orange Tree filed a joint motion in Eckert's bankruptcy in the San Bernadino bankruptcy court seeking approval of the compromise of Eckert's claim pursuant to Bankruptcy Rule 9019(a).[3] The subcontractor objected on the ground the compromise was unfair to the Eckert estate. The subcontractor offered to pay the Eckert estate more than the $8,000 it would receive from the compromise and to hire special counsel to pursue Eckert's claim against Orange Tree for the benefit of the estate. The San Bernardino bankruptcy court accepted the offer, rejected the compromise, and authorized the subcontractor to hire special counsel.

Special counsel for the Eckert estate filed a complaint on March 3, 1989 in the Orange Tree bankruptcy in Los Angeles bankruptcy court seeking to overturn the order confirming the Orange Tree reorganization plan on the ground of fraud in its procurement.[4] The Los Angeles bankrupt-

---

**1.** For convenience, we do not differentiate between New West and its predecessor in interest, but refer to the bank as New West throughout this opinion.

**2.** The subcontractor attempted to intervene directly in the Orange Tree bankruptcy by filing a motion, pursuant to Bankruptcy Rule 9024, to set aside the reorganization plan on grounds of fraud. The Los Angeles bankruptcy judge dismissed the motion, ruling that a confirmation order may be revoked only through an action under 11 U.S.C. § 1144, and that such an action must be brought by complaint, not by motion. The subcontractor did not appeal the dismissal.

**3.** Rule 9019(a) provides that "[o]n motion by the trustee and after a hearing on notice to creditors ... the court may approve a compromise or

settlement." Had the Eckert trustee sought approval of the compromise—or of the decision to vote in favor of the Orange Tree reorganization plan—*before* casting Eckert's vote, the present litigation might well have been avoided.

**4.** The complaint alleged New West's predecessor-in-interest was involved in a joint venture with Orange Tree on the condominium project and as an equity participant could not also be the senior lien holder. The complaint alleged New West and Orange Tree committed fraud by not disclosing the existence of the joint venture arrangement prior to the vote on the reorganization plan. The complaint also alleged fraud in the tabulation of ballots in the vote on the reorganization plan. The relief sought was to have New West's lien subordinated to the interests of the other Orange Tree creditors.

cy court dismissed the complaint, in part because it was filed after the 180–day limitations period provided by 11 U.S.C. § 1144. The Bankruptcy Appellate Panel (BAP) affirmed on this ground. Eckert filed this appeal.[5] We affirm.

## II

An order confirming a Chapter 11 reorganization plan may be revoked only in accordance with 11 U.S.C. § 1144:

> On request of a party in interest at any time *before 180 days after the date of the entry of the order of confirmation,* and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud....

(emphasis added).[6]

■ If the only facts were those already mentioned, affirmance would be required because the complaint was not filed within 180 days of the entry of the confirmation order on June 6, 1988. On September 6, 1988, however, the Los Angeles bankruptcy court entered a "Modified Order Confirming Debtor's First Amended Plan of Reorganization." This Modified Order is in the same format, and repeats much of the text of the June 6 "Order Confirming Debtor's First Amended Plan of Reorganization." Apparently, Orange Tree obtained the Modified Order after a title insurance company expressed concern about ambiguities in the original order.

The Modified Order may have clarified some ambiguities, but it created another:

There were now two orders confirming the plan, one entered June 6, the other September 6. Eckert contends the 180–day period in section 1144 should run from the later order, making Eckert's March 3, 1989 complaint timely. New West contends the 180 days ran from the first order, requiring dismissal of the complaint. We agree with the bankruptcy court and the BAP that the 180–day period ran from the June 6 order.

■ Congress has determined that a 180–day limitations period strikes the appropriate balance between the strong need for finality in reorganization plans and the interest in affording parties in interest a reasonable opportunity to discover and assert fraud. In recognition of the strength of the interest in finality of reorganization plans, courts have held uniformly that strict compliance with section 1144 is a prerequisite to relief. *See Newport Harbor,* 589 F.2d at 22, and the cases cited therein.[7] Expiration of the limitations period bars a motion to set aside the confirmation of a reorganization plan even if the fraud is not discovered until the period has passed. *See In re Medical Analytics,* 532 F.2d 879 (2d Cir.1976) (adopting the opinion of Judge Conner at 410 F.Supp. 922 (S.D.N.Y.1975)). There is a compelling reason for finality of reorganization plans. A Chapter 11 proceeding is

> focused towards rehabilitating a business, which if successful, is to the benefit of all persons who had dealings with

---

5. Orange Tree elected not to participate in this appeal, stating it would adhere to its position before the Bankruptcy Appellate Panel. New West filed a brief supporting the BAP's order and for convenience will be referred to as if it were the sole appellee.

New West contends Eckert failed to properly appeal from the dismissal of its complaint because it filed a notice of appeal while its motion for reconsideration was pending before the bankruptcy court. While this notice of appeal was premature, *see* Bankruptcy Rule 8002(b), Eckert filed a second notice of appeal within 10 days after denial of its motion for reconsideration. The second notice of appeal was timely.

We reject New West's contention that Eckert has appealed only from the denial of the motion for reconsideration. The second notice of appeal states the appeal is from dismissal of the

complaint as well as from denial of the motion for reconsideration.

6. "[S]ection 1144 is the only avenue for revoking confirmation of a plan of reorganization." *In re Longardner & Assocs., Inc.,* 855 F.2d 455, 460 (7th Cir.1988) (citing *In re Newport Harbor Assocs.,* 589 F.2d 20, 22 (1st Cir.1978)).

7. *See also Longardner,* 855 F.2d at 460; *In re Coffee Cupboard, Inc.,* 119 B.R. 14, 19 (E.D.N.Y. 1990); *In re Emmer Bros. Co.,* 52 B.R. 385, 390–91 (D.Minn.1985); *In re Gross,* 121 B.R. 587, 592 (Bankr.D.S.D.1990); *In re Depew,* 115 B.R. 965, 973 (Bankr.N.D.Ind.1989); *In re Cinderella Clothing Indus. Inc.,* 93 B.R. 373, 375–76 (Bankr. E.D.Pa.1988); *In re Emergency Beacon Corp.,* 48 B.R. 356, 359–61 (Bankr.S.D.N.Y.1985); 5 Collier on Bankruptcy ¶ 1144.01 (15th ed.1991); 9 Collier on Bankruptcy ¶ 11.02[2] (14th ed.1978).

the debtor. Such plans are not easily devised, and once accomplished a short time for challenging such plan is necessary to keep alive the potential life of that business. Uncertainty of continued operations, injected by a Sword of Damocles in the form of fraud allegations which can be filed at any time in the future, would render meaningless the whole purpose of a Chapter XI proceeding.

*Newport Harbor*, 589 F.2d at 23 n. 6. As Judge Learned Hand said in *Vogel v. Mohawk Elec. Sales Co.*, 126 F.2d 759 (2d Cir.1942), unless a reorganized debtor can assure new creditors "as to the amount of his actual liabilities without a contingent addition of the old debts, he will start with a handicap in a race which he has already once lost." *Id.* at 761.

When the June 6 order was entered, parties in interest were on notice they had a limited time to seek revocation on the ground of fraud. They could not rely on the fortuity that later events might extend the deadline. Eckert's complaint was directed solely to fraud in the procurement of the June 6 confirmation order. The complaint alleges the vote on the reorganization plan was tainted because Orange Tree and New West did not disclose their true relationship, and because ballots were tabulated incorrectly. The only vote taken preceded entry of the June 6 order; no new vote was taken before entry of the September 6 order. Since the second confirmation order was unrelated to the alleged fraud, entry of that order provided no excuse for extending the limitations period for challenging the initial order.[8]

Entry of the order confirming a reorganization plan is the key event in a Chapter 11

bankruptcy, discharging the debtor from pre-confirmation debt and substituting the obligations imposed by the plan. The confirmation order may be revoked upon the request of a party in interest "if and only if such order was procured by fraud" and "[a]n order ... revoking an order of confirmation shall ... revoke the discharge of the debtor." 11 U.S.C. § 1144. In referring to "the date of the entry of *the* order of confirmation" (emphasis added), section 1144 makes clear it contemplates the entry of only *one* such order, unless the order is revoked for fraud or the plan is modified after confirmation pursuant to the procedures set forth in section 1127(b). *See also* 11 U.S.C. § 1129(c) ("except as provided in section 1127(b) of this title, the court may confirm only one plan, unless the order of confirmation in the case has been revoked under section 1144 of this title"). As we have noted, entry of the September 6 order was not preceded by compliance with the conditions imposed by section 1127(b) for modification of a confirmed plan.

Eckert argues the September 6 order materially affected its rights and the section 1144 limitations period therefore must be extended to allow a reasonable opportunity for challenge. But for the reasons already stated, the "court has no power to extend the time within which the motion [to revoke a confirmation plan] may be made." 9 Collier on Bankruptcy ¶ 11.02[2] at 648 (14th ed. 1978).[9]

We note, however, that the September 6 order did not materially affect Eckert's rights. If it had, Eckert's remedy was not to seek revocation of the reorganization plan for fraud, but to ask the bankruptcy court to reconsider the September 6 order.

---

**8.** Eckert's reliance on *In re TM Carlton House Partners, Ltd.*, 110 B.R. 185 (Bkrtcy.E.D.Pa. 1990), is misplaced. In *Carlton House,* a confirmed reorganization plan was modified pursuant to 11 U.S.C. § 1127(b). The court held that by the terms of section 1127(b) the modified plan "becomes" the debtor's reorganization plan and therefore the 180–day period for challenges to the plan runs from the date of modification, rather than the date of initial confirmation. 110 B.R. at 188–89. This case did not involve the modification of a confirmed plan pursuant to section 1127(b) after all the protective mea-

sures required by that section had been taken, but the entry, without a hearing or a vote, of a superseding order purporting to confirm the same plan.

**9.** *See Newport Harbor*, 589 F.2d at 24 ("notwithstanding the court's traditional equitable powers or the powers conferred by [Federal] Rule [of Civil Procedure] 60(b), strict compliance with the six month limitation period is a prerequisite to relief"); *see also* Bankruptcy Rule 9024(3); Advisory Committee Note (1983) to Rule 9024.

The modified order differs from the original only in that it: (1) set a new "effective date" for the plan, (2) explicitly discharged all liens other than that of New West, (3) set a new period for filing claims based on the rejection of executory contracts and (4) allowed the reorganized debtor to make payments for professional services in the ordinary course of business. The only change that could have affected Eckert is the explicit discharge of liens. But such an explicit discharge was unnecessary:

> [E]xcept as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors, equity security holders, and of general partners in the debtor.

11 U.S.C. § 1141(c).[10] Neither the plan, nor the June 6 confirmation order, exempts any lien from discharge except that of New West.[11]

The other three changes were consistent with the plan as originally confirmed and involved only housekeeping matters. They could and should have been made not by what purported to be a modified order of confirmation, but rather by an order entered pursuant to the provision of the reorganization plan authorizing the Los Angeles bankruptcy court "to carry out the provisions, purposes and intent of the Plan" through the "[e]ntry of orders in aid of implementation of the Plan."

If the substance of Eckert's complaint is not that confirmation of the reorganization plan on June 6 was procured by fraud, but rather that the changes made by the order of September 6 injured Eckert—if, for example, Eckert contends its lien was somehow exempt from discharge by the June 6 order, and was subsequently and erroneously discharged by the September 6 order—Eckert was free to challenge the September 6 order by motion filed under Bankruptcy Rule 9024 (incorporating Fed. R.Civ.P. 60) and to appeal if the motion were denied.

AFFIRMED.

---

**10.** A "claim" means any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...." 11 U.S.C. § 101(5) (Supp.1991).

**11.** Eckert notes the plan states:
CONDITION TO CONFIRMATION OF THE PLAN
This plan will not be confirmed unless, on or before the Effective Date, all liens on the Project shall have been removed other than that of American [New West's predecessor in interest] and such other liens, if any, as American shall consent to in writing.

Eckert argues this clause implies liens were not automatically removed by the confirmation of the plan. We agree that the clause is poorly drafted, but not that it was intended to preserve liens from discharge. Such an interpretation would be inconsistent with the essence of the plan, which provided for a reconstituted partnership to complete the condominium project with financing from New West, subject only to the New West lien. All other creditors would receive cash payments. The Eckert trustee was sent a copy of the September 6 order and would not have remained silent if surprised to learn of the discharge of Eckert's lien.