**ORDERED PUBLISHED**

## UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.    CC-18-1337-FLKu |
| MICHAEL YOUNESSI, | Bk. No.    8:16-bk-15208-MW |
| Debtor. | Adv. Pro.  8:18-ap-01150-MW |
| DIAMOND ENTERPRISES, LTD., LP, | |
| Appellant, | |
| v. | **OPINION** |
| MICHAEL YOUNESSI, | |
| Appellee. | |

Argued and Submitted on June 20, 2019
at Pasadena, California

Filed – July 10, 2019

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Mark S. Wallace, Bankruptcy Judge, Presiding

Appearances: M. Douglas Flahaut of Arent Fox LLP argued for appellant Diamond Enterprises, Ltd., LP; Michael Jones of M Jones & Associates, PC argued for appellee Michael Younessi.

———

Before: FARIS, LAFFERTY, and KURTZ, Bankruptcy Judges.

FARIS, Bankruptcy Judge:

## INTRODUCTION

The bankruptcy court confirmed debtor Michael Younessi's chapter 11[1] plan, then granted (in part) creditor Diamond Enterprises, Ltd., LP's ("Diamond") motion to modify the confirmation order. Over 180 days after the original confirmation order, but less than 180 days after the modification, Diamond filed a complaint to revoke confirmation, contending that the original confirmation order was procured by fraud. Mr. Younessi filed a motion to dismiss the complaint, arguing that it was barred by the 180-day deadline in § 1144. The bankruptcy court agreed with Mr. Younessi, and Diamond appealed.

The narrow question on appeal is whether the modification order reset the 180-day deadline for Diamond to seek revocation of the plan

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are the Federal Rules of Civil Procedure.

2

confirmation. We agree with Diamond that, on the facts of this case, the 180-day period ran from the order modifying the plan confirmation order. Accordingly, we REVERSE and REMAND.

## FACTUAL BACKGROUND[2]

### A.    Prepetition events

Mr. Younessi was close friends with Dr. Bruce Houman, Diamond's manager, and solicited investments from Dr. Houman to develop commercial real estate. Dr. Houman, through Diamond, contributed over $2 million toward the purchase of real estate and interests in Mr. Younessi's companies.

Mr. Younessi and Dr. Houman obtained a $1.2 million line of credit secured against the investment properties. Almost immediately, Mr. Younessi began unilaterally withdrawing money for personal use without Dr. Houman's knowledge or permission.

In July 2009, Diamond sued Mr. Younessi and his company in California superior court for fraud, breach of fiduciary duty, securities violations, and other claims. Following a trial, the state court ruled against Mr. Younessi and in favor of Diamond. The court found that Mr. Younessi made material misrepresentations to Dr. Houman regarding his and his

---

[2] We exercise our discretion to review the bankruptcy court's docket, as appropriate. *See Woods & Erickson, LLP v. Leonard (In re AVI, Inc.),* 389 B.R. 721, 725 n.2 (9th Cir. BAP 2008).

companies' finances and net worth and the nature and value of some of the companies and real properties. It entered judgment totaling $3,979,242.68 plus attorneys' fees. The court of appeal affirmed.

## B. Mr. Younessi's chapter 11 case and confirmed plan

Mr. Younessi filed his chapter 11 petition on December 27, 2016.

Diamond filed an adversary complaint seeking a determination that the state court judgment was nondischargeable under §§ 523(a)(2), (4), (6), and (19). Diamond also filed a proof of claim for $7,220,122.60 based on the state court judgment debt.

Mr. Younessi filed his proposed chapter 11 plan and disclosure statement on July 30, 2017. He filed a first amended plan (the "Plan") and first amended disclosure statement on September 1, 2017. The bankruptcy court approved the amended disclosure statement.

The Plan classified Diamond as a Class 7 Creditor, acknowledging that the judgment debt was "potentially non-dischargeable." The Plan proposed three options for treatment of Diamond's claim. Treatment A provided that Diamond would receive a single payment of $22,000 in full satisfaction of its claims, that Diamond would "consent" to the discharge of Mr. Younessi's liability to it and Dr. Houman, and that "Houman will provide a statement to Debtor that Houman no longer believes the actions of Debtor forming the basis of Diamond's claim were improper, and Diamond's claim ultimately arose because of a business deal that went bad

4

without malfeasance of any of the parties." Treatment B required Mr. Younessi to "pay Diamond 5% of his annual earnings between $250,000 and $350,000, and 10% of his annual earnings in excess of $350,000.00 until Claim 7 is paid in full, the debt is discharged, or the Debtor's obligations to continue with these payments is otherwise terminated." Treatment C provided that Mr. Younessi would pay Diamond a lump-sum distribution of $80,000 in exchange for Diamond conveying certain property interests to Mr. Younessi. If Diamond selected none of the options, "Class 7 Treatment A will be the default treatment for Class 7."

Diamond was the only voting creditor to cast a ballot rejecting the Plan. It did not choose any of the proposed treatments.

Diamond also objected to the Plan. It argued that the Plan did not satisfy the statutory requirements for plan confirmation and sought to compel Diamond to make false and misleading statements regarding the state court action. It contended that Mr. Younessi did not disclose all material information, assets, and risks in the Plan, including prior bankruptcy proceedings, related bankruptcy proceedings, and interests in various companies.

The bankruptcy court entered an order confirming the Plan ("Confirmation Order") on December 21, 2017. It stated that "nothing in the Chapter 11 Plan shall have any effect on Diamond's pending non-dischargeability action against Debtor except to the extent that

5

Diamond is determined to have actually or constructively consented to such effect or as otherwise provided by law, and except to the extent, if any, that Diamond's ineligibility to vote on the Chapter 11 Plan has a bearing on these matters."[3]

In its findings of fact and conclusions of law, the court found that the Plan complied with the applicable provisions of the Bankruptcy Code. The court found that Diamond selected Treatment A by not picking either Treatment B or C. It stated that "Diamond elected this treatment by its own decision, and as such Diamond effectively waived its objections by agreeing to that treatment by consent."

## C.    Motion for reconsideration

Diamond filed a motion for reconsideration of the Confirmation Order under Rules 9023 and 9024. It requested that the bankruptcy court either decline to confirm the Plan or modify the Confirmation Order to make clear that the Confirmation Order and Plan shall not "have any effect on Diamond's pending Nondischargeability Action against the Debtor and, in the event Diamond prevails in that action, such nondischargeable judgment in favor of Diamond (if any) will not be adversely affected or discharged pursuant to the [Plan] . . . ." It argued that it did not consent to

---

[3] The bankruptcy court noted that Diamond had cast a ballot rejecting the Plan, but, because Mr. Younessi had objected to Diamond's proof of claim, "Diamond did not have an allowed claim at the time the ballot was cast, and was therefore not permitted to vote."

plan confirmation or its treatment under the Plan, and that the Plan did not satisfy the requirements for confirmation.

Mr. Younessi opposed the motion for reconsideration. He argued that Diamond waived its objections by not raising them until after the deadline for objections had passed. He argued that Diamond had consented to its treatment under the Plan by failing to select a treatment option.

On January 29, 2018, the bankruptcy court entered an order granting the motion for reconsideration ("Reconsideration Order"). It recognized that Diamond did not elect Treatment A and stated that "nothing within the four corners of the Plan states that such [default] placement is within Diamond Enterprises's actual or even deemed consent." It concluded that, "[i]n view of the absence of consent, the cramdown and best interests of creditors tests are not satisfied . . . , making the Plan unconfirmable." But rather than vacate the Confirmation Order, the court decided to grant the alternative relief requested in the motion for reconsideration and modify the Confirmation Order. The bankruptcy court ordered:

> **The Confirmation Order is specifically modified to make clear that nothing in the Confirmation Order or the Amended Plan shall** require an affirmative statement from Houman or **have any effect on Diamond's pending Nondischargeability Action against the Debtor** and, in the event Diamond prevails in that action, such nondischargeable judgment in favor of Diamond (if any) will not be materially and adversely affected or discharged pursuant to the Amended Plan and will be fully enforceable against the Debtor to the extent provided by law notwithstanding the express provisions of the Amended Plan.

(Emphases added.) No one appealed from the order confirming the plan or the Reconsideration Order, and the time to do so has long since expired.

**D.    The second adversary complaint and the motion to dismiss**

On July 27, 2018, 179 days after the court entered the Reconsideration Order, Diamond filed a second adversary complaint seeking to revoke confirmation of the Plan. Diamond alleged that Mr. Younessi failed to report prebankruptcy income, engaged in schemes to defraud creditors by granting title to his properties to other entities on the eve of foreclosure, failed to disclose ownership interests in various companies, and failed to disclose ownership interests in community property and internet domain names. The first cause of action sought revocation of the Plan under § 1144. The second cause of action sought unspecified damages arising from Mr. Younessi's alleged fraud.

Mr. Younessi filed a motion to dismiss ("Motion to Dismiss") the adversary complaint under Civil Rule 12(b)(6). His argument was straightforward: that Diamond failed to file the adversary complaint within the 180-day deadline under § 1144. Mr. Younessi contended that the complaint was filed 218 days after the Confirmation Order and 179 days after the Reconsideration Order. He argued that the 180-day period ran from "the date of the entry of the order of confirmation[,]" which implicated the Confirmation Order, not the Reconsideration Order.

8

Mr. Younessi relied solely on the Ninth Circuit's decision in *Dale C. Eckert Corp. v. Orange Tree Associates, Ltd. (In re Orange Tree Associates, Ltd.)*, 961 F.2d 1445 (9th Cir. 1992) (hereinafter "*Orange Tree*"), which held that an adversary proceeding filed more than 180 days after the original confirmation order, but less than 180 days after the modification of the confirmation order, was untimely.

Diamond opposed the motion to dismiss, arguing that the "major substantive changes and modifications to the plan" mandated that the 180-day period began running from entry of the Reconsideration Order, not the Confirmation Order. It acknowledged the Ninth Circuit's holding in *Orange Tree*, but distinguished that case by arguing that *Orange Tree* "'involved only housekeeping matters' that did not materially affect the rights of the protesting creditor[,]" while the Reconsideration Order "was entered to substantively alter the plan to, among other things, carve out Diamond's nondischargeability action so that the plan would not expressly violate 11 U.S.C. § 1141's requirement that a plan not discharge nondischargeable debt."

Rather, it urged the court to adopt the reasoning in Collier on Bankruptcy and *Berg v. TM Carlton House Partners, Ltd. (In re TM Carlton House Partners, Ltd.)*, 110 B.R. 185 (Bankr. E.D. Pa. 1990) (hereinafter "*TM Carlton House*"): "An order confirming a modified plan is the effective order of confirmation for the plan and the 180-day period would begin to

run anew." 8 Collier on Bankruptcy ¶ 1144.04[1] (Richard Levin & Henry J. Sommer eds., 16th ed. 2019).

Diamond also argued that the 180-day deadline applied only to its first cause of action for revocation of discharge, not the second cause of action for fraud damages.

The bankruptcy court entered an order (the "Dismissal Order") granting the motion in part. The bankruptcy court concluded:

> *Orange Tree* clearly applies here and compels the conclusion that the 180-day period began running in the case on December 21, 2017 – the date of the entry of the Plan Confirmation Order. The Reconsideration Order did not result from any modification of the Plan under Bankruptcy Code section 1127 and there certainly was no compliance with the requirements of section 1127(b). Accordingly, the potential exception that may apply when a confirmed plan is modified under section 1127 plays no role here.
>
> The rationale for having the 180-day period run from the date of entry of a modification order as opposed to the original confirmation order is even weaker here than it was in *Orange Tree* because the Reconsideration Order enlarged rather than diminished Diamond's rights. And, even if it had diminished them, Diamond's remedy would have been under Bankruptcy Rule 9024.

It held that *TM Carlton House* is distinguishable because the modification order there was issued under § 1127(b).

The court dismissed the first cause of action to revoke the

confirmation as barred by the 180-day statute of limitations under § 1144. However, it held that the second cause of action for fraud "remains intact[.]"

Diamond timely filed a notice of appeal and motion for leave to appeal the interlocutory Dismissal Order. The BAP motions panel granted leave to appeal.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(I) and (L). We have jurisdiction under 28 U.S.C. § 158(a)(3).

## ISSUE

Whether the Reconsideration Order reset the 180-day deadline for Diamond to file its adversary proceeding seeking revocation of Mr. Younessi's chapter 11 plan confirmation under § 1144.

## STANDARD OF REVIEW

We review the bankruptcy court's legal conclusions de novo, including its interpretation of the Bankruptcy Code. *Francis v. Wallace (In re Francis)*, 505 B.R. 914, 917 (9th Cir. BAP 2014) (citation omitted). Similarly, "[w]e review de novo the [trial] court's grant of a motion to dismiss under [Civil] Rule 12(b)(6), accepting all factual allegations in the complaint as true and construing them in the light most favorable to the nonmoving party." *Narayanan v. British Airways*, 747 F.3d 1125, 1127 (9th Cir. 2014) (citation omitted).

11

"De novo review requires that we consider a matter anew, as if no decision had been made previously." *In re Francis*, 505 B.R. at 917 (citations omitted).

## DISCUSSION

Section 1129 controls the confirmation of chapter 11 plans of reorganization. Following confirmation of a chapter 11 plan, the court may revoke the confirmation order for fraud under § 1144. Section 1144 provides the only avenue for revocation of a confirmed plan. *In re Valley Health Sys.*, No. 6:07-bk-18293-PC, 2011 WL 7637256, at *6 (Bankr. C.D. Cal. Nov. 8, 2011), *aff'd sub nom. Lopez v. Post-Effective Date Committee of Creditors (In re Valley Health Sys.)*, BAP No. CC-11-1657-MkDKi, 2012 WL 3205173 (9th Cir. BAP Aug. 3, 2012).

Section 1144 provides, in relevant part:

> On request of a party in interest at any time before 180 days after the date of the entry of the order of confirmation, and after notice and a hearing, the court may revoke such order if and only if such order was procured by fraud.

§ 1144. "In practical effect there is a 180-day statute of limitations that balances bankruptcy's strong policy of finality against the need to unravel frauds. After 180 days, one's options become more limited." *Official Comm. of Unsecured Creditors v. Michelson (In re Michelson)*, 141 B.R. 715, 723 (Bankr. E.D. Cal. 1992); *see Huntington Banks of Mich. v. Felcor/Lax Holdings LP*, 9 F.

12

App'x 669, 670 (9th Cir. 2001) ("Section 1144's six-month time limit to file actions seeking revocation of a Plan is absolute, and no motion for revocation may be filed once the period has expired, regardless of the circumstances." (citing *Farley v. Coffee Cupboard, Inc. (In re Coffee Cupboard, Inc.)*, 119 B.R. 14, 19 (E.D.N.Y. 1990))); Rule 9024 ("[A] complaint to revoke an order confirming a plan may be filed only within the time allowed by § 1144, § 1230, or § 1330.").

The Ninth Circuit construed § 1144 in *Orange Tree*. In that case, the creditor, Eckert,[4] held a disputed, secured claim of $765,763. Orange Tree proposed a chapter 11 plan that would generate approximately $8,000 for Eckert. Eckert voted to accept the plan, and the bankruptcy court confirmed Orange Tree's chapter 11 plan of reorganization. 961 F.2d at 1446.

Three months later, the bankruptcy court entered a modified confirmation order in Orange Tree's bankruptcy case to clarify ambiguities in the original confirmation order. *Id.* at 1447. The court of appeals noted that the modified plan "(1) set a new 'effective date' for the plan, (2) explicitly discharged all liens other than that of [a bank], (3) set a new period for filing claims based on the rejection of executory contracts and

---

[4] Coincidentally, Eckert had also filed for bankruptcy protection, so most of the actions which our discussion attributes to Eckert were actually done by Eckert's bankruptcy trustee for the benefit of Eckert's bankruptcy estate. To keep things simple, we will refer to the creditor as "Eckert."

(4) allowed the reorganized debtor to make payments for professional services in the ordinary course of business." *Id.* at 1449.

Less than 180 days after entry of the modified confirmation order, but more than 180 days after entry of the original confirmation order, Eckert filed a complaint seeking to revoke the confirmation order on the basis of fraud. The bankruptcy court dismissed the complaint as untimely. The BAP affirmed, and Eckert again appealed. *Id.* at 1446-47.

The Ninth Circuit stated that, if the original confirmation order was the operative order, then Eckert's complaint was untimely. If the modified order controlled, then the complaint was timely. It held that the 180-day period under § 1144 ran from the original order. *Id.* at 1447.

The court first examined the policy reasons behind choosing the earlier date:

> Congress has determined that a 180-day limitations period strikes the appropriate balance between the strong need for finality in reorganization plans and the interest in affording parties in interest a reasonable opportunity to discover and assert fraud. In recognition of the strength of the interest in finality of reorganization plans, courts have held uniformly that strict compliance with section 1144 is a prerequisite to relief. Expiration of the limitations period bars a motion to set aside the confirmation of a reorganization plan even if the fraud is not discovered until the period has passed.

*Id.* (citations omitted). It noted that a "compelling reason for finality of

14

reorganization plans" was that chapter 11 "plans are not easily devised, and once accomplished a short time for challenging such plan is necessary to keep alive the potential life of that business. Uncertainty of continued operations, injected by a Sword of Damocles in the form of fraud allegations which can be filed at any time in the future, would render meaningless the whole purpose of a Chapter XI proceeding." *Id.* at 1448 (quoting *In re Newport Harbor Assocs.*, 589 F.2d 20, 23 n.6 (1st Cir. 1978)).

Based on these policy considerations, the court held that the "parties in interest were on notice they had a limited time to seek revocation on the ground of fraud." *Id.* at 1448. It noted that, "[s]ince the second confirmation order was unrelated to the alleged fraud, entry of that order provided no excuse for extending the limitations period for challenging the initial order." *Id.*

The court further stated that § 1144 "contemplates the entry of only **one** such order, unless the order is revoked for fraud or the plan is modified after confirmation pursuant to the procedures set forth in section 1127(b). As we have noted, entry of the [modification] order was not preceded by compliance with the conditions imposed by section 1127(b)[5] for modification of a confirmed plan." *Id.* (citations omitted).

---

[5] Section 1127(b) provides that "[s]uch plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title."

The court rejected Eckert's argument that extension of the 180-day period was warranted because the modified order materially affected its rights. It held that none of the changes in the modification order affected Eckert's rights; other than explicitly discharging certain liens (which did not affect Eckert), the changes "were consistent with the plan as originally confirmed and involved only housekeeping matters." *Id.* at 1449.

In any event, the court held that, even if the modified order had materially affected Eckert's rights, "Eckert's remedy was not to seek revocation of the reorganization plan for fraud, but to ask the bankruptcy court to reconsider the [modification] order." *Id.* at 1448. It held that even the three "housekeeping matters" "could and should have been made not by what purported to be a modified order of confirmation, but rather by an order entered pursuant to the provision of the reorganization plan authorizing the . . . bankruptcy court 'to carry out the provisions, purposes and intent of the Plan' through the '[e]ntry of orders in aid of implementation of the Plan.'" *Id.* at 1449.

In this case, Diamond contends that the bankruptcy court erred in rejecting *TM Carlton House*, a 1990 case from the bankruptcy court for the Eastern District of Pennsylvania. In *TM Carlton House*, the bankruptcy court held that the later order confirming a modified plan was the operative confirmation order because the modifications complied with § 1127(b). 110 B.R. at 188. The proposed modifications were "in several respects deemed

16

sufficiently technical to not require the preparation of an Amended Disclosure Statement." *Id.* at 187. The bankruptcy court held that the later order "followed notice and a hearing . . . . Consequently, the Plan confirmed by the [later order] **became** the Debtor's Plan of Reorganization." *Id.* at 188 (emphasis in original).

In *Orange Tree*, the Ninth Circuit distinguished *TM Carlton House*. It stated:

> In *Carlton House*, a confirmed reorganization plan was modified pursuant to 11 U.S.C. § 1127(b). The court held that by the terms of section 1127(b) the modified plan "becomes" the debtor's reorganization plan and therefore the 180-day period for challenges to the plan runs from the date of modification, rather than the date of initial confirmation. 110 B.R. at 188-89. This case did not involve the modification of a confirmed plan pursuant to section 1127(b) after all the protective measures required by that section had been taken, but the entry, without a hearing or a vote, of a superseding order purporting to confirm the same plan.

961 F.2d at 1448 n.8.

The facts of this case are closer to *TM Carlton House* than to *Orange Tree*. The Reconsideration Order changed the Plan in significant ways. Those changes affected all creditors and were not "housekeeping matters" by any stretch of the imagination.

As it was proposed to creditors, the Plan provided only three possible treatments for Diamond's claim. But the Reconsideration Order effectively

created a fourth treatment (Treatment D?) that was not in the Plan, not described in the accompanying disclosure statement, and not formally presented to the other creditors for objections or for acceptance or rejection.

The new treatment had a material effect, not just on Diamond, but also on the other creditors. Under each of the three treatments specified in the Plan, the amount that Mr. Younessi had to pay to Diamond was controlled: Treatments A and C each provided for the payment of fixed dollar amounts; and Treatment B provided for payment of stated percentages of Mr. Younessi's annual income. These limits improved the chances that Mr. Younessi would be able to carry out the Plan and pay other unsecured creditors as the Plan required.[6] (They also support the finding of a required element of plan confirmation: that "[c]onfirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor . . . ." § 1129(a)(11).) But the Reconsideration Order's new fourth treatment destroyed this expectation. Mr. Younessi faces the prospect of a nondischargeable debt for over $7 million. His risk is serious, given that the state court had already found that he made misrepresentations to Diamond. Under the Reconsideration Order, he has no way to prevent Diamond from enforcing that debt by

---

[6] The Plan requires Mr. Younessi to make quarterly payments to general unsecured creditors over a five-year period. Secured claims were satisfied by the surrender of collateral.

18

garnishing his income and seizing other assets, which could in turn make it impossible for him to carry out his plan and make distributions to his other creditors.

There is another important distinction between this case and *Orange Tree*: as the bankruptcy judge acknowledged with admirable candor, the Plan was "non-confirmable." Under Treatment A, which the bankruptcy court initially held was binding on Diamond, Diamond's claim would be discharged without an adjudication of Diamond's claims of nondischargeability. This was impermissible unless Diamond consented to it.[7] Mr. Younessi argued that Diamond had consented to Treatment A because it failed to choose among Treatments A, B, and C. But Diamond had vigorously objected to confirmation of the entire plan. To say that Diamond opposed confirmation of the whole Plan, but voluntarily consented to one provision of that Plan, is sophistry.

The bankruptcy court realized this when it entered the Reconsideration Order. In doing so, the bankruptcy court was carrying out its duty to deny confirmation of a plan that violates the Bankruptcy Code. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 277 (2010) (holding that the bankruptcy court should "confirm a plan only if the court finds,

---

[7] Section 1141(d)(2) provides that "[a] discharge under this chapter does not discharge a debtor who is an individual from any debt excepted from discharge under section 523 of this title." We assume (without deciding) that a creditor in Diamond's position could waive this protection by consenting to it.

inter alia, that the plan complies with the 'applicable provisions' of the Code. . . . [T]he Code makes plain that bankruptcy courts have the authority — indeed, the obligation — to direct a debtor to conform his plan to the requirements of" the Bankruptcy Code).

In short, the Reconsideration Order's changes to the Plan were not mere clarifications or housekeeping matters, but rather were of great significance to all concerned. Unlike *Orange Tree*, the Reconsideration Order did not confirm the same Plan as the Confirmation Order; in reality, it refashioned the Plan in an important way.

Mr. Younessi argues that the 180-day period always runs from the entry of the initial confirmation order, regardless of any subsequent plan modification. This misreads *Orange Tree*. The Ninth Circuit emphasized in that case that the changes to the plan were mere clarifications and housekeeping matters. The court went so far as to criticize the bankruptcy court for modifying the confirmation order at all: instead, the court said that the bankruptcy court should have entered an order implementing the plan. *Orange Tree*, 961 F.2d at 1449. *Orange Tree* does not stand for the proposition that the 180-day period is unaffected by even a substantive modification of the plan.

Mr. Younessi argues that the Reconsideration Order did not modify the Plan, but rather only modified the Confirmation Order. This argument ignores the fact that the Confirmation Order expressly provides (in two

separate provisions) that its terms control over any inconsistent provisions of the Plan. In other words, the change to the Confirmation Order that created an inconsistency with the Plan – the creation of the new treatment for Diamond's claim – also automatically changed the Plan.

Mr. Younessi also argues that the bankruptcy court did not invoke § 1127. But this argument disregards the facts that the changes to the Confirmation Order did change the Plan; that § 1127 is the only statutory basis to amend a plan; and that any plan modification must therefore comply with § 1127. Section 1127 applied here because the Reconsideration Order changed the Plan in ways that affected all unsecured creditors.[8] Even assuming for the sake of argument that the court should have invoked the protective provisions of § 1127,[9] its failure to do so could not logically

---

[8] In *Orange Tree*, the Ninth Circuit implied that the modified order was not entered pursuant to § 1127(b) (which distinguished it from *TM Carlton House*). 961 F.2d at 1448 n.8. However, that statement cannot be read in isolation. The Ninth Circuit observed that changes to Orange Tree's plan were largely "housekeeping matters" and "clarifications" that did not affect other creditors or implicate the need for the protections of §§ 1127 and 1129. In contrast, the changes to Mr. Younessi's Plan were not mere housekeeping matters or clarifications.

[9] As the bankruptcy court observed, Diamond gave notice of its motion for reconsideration to all creditors. No creditor objected to the motion or appeared at the hearing, so they waived any argument that § 1127 was not satisfied. Further, even if the bankruptcy court erred in failing to apply the protective provisions of § 1127, the Plan remains binding. Neither Diamond nor anyone else appealed from the Reconsideration Order, and the time for doing so has expired. At oral argument, Diamond's counsel confirmed that it deliberately chose not to appeal. Therefore, the Plan, as modified by

(continued...)

shorten the time to file a complaint under § 1144; to hold otherwise would imply that one deprivation of rights justifies (or even requires) a reduction of the time during which creditors can assert other rights.

Accordingly, under *Orange Tree*, the Reconsideration Order restarted the 180-day period under § 1144, and Diamond's complaint was timely.

## CONCLUSION

Because the adversary complaint was timely, the bankruptcy court erred in granting Mr. Younessi's Motion to Dismiss. We REVERSE and REMAND.

---

[9](...continued)
the Confirmation Order and the Reconsideration Order, is res judicata. *See Espinosa*, 559 U.S. at 275 ("the Bankruptcy Court's failure to find undue hardship before confirming [debtor's] plan was a legal error. . . . But the order remains enforceable and binding on [creditor] because [creditor] had notice of the error and failed to object or timely appeal").

22